

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-18-00034-CV

IN THE INTEREST OF J.B.,
A CHILD

----------

FROM THE 235TH DISTRICT COURT OF COOKE COUNTY
TRIAL COURT NO. CV16-00427

----------

## MEMORANDUM OPINION[1]

----------

After a jury trial, the trial court terminated appellant D.L.M.'s parental rights to his 18-month-old son, J.B.[2] On appeal, D.L.M. raises five issues. In his first three, he attacks three grounds for termination. *See* Tex. Fam. Code Ann.

---

[1]*See* Tex. R. App. P. 47.4.

[2]We use initials to refer to various individuals associated with this appeal. *See* Tex. Fam. Code Ann. § 109.002(d) (West Supp. 2017); Tex. R. App. P. 9.8(b)(2).

§ 161.001(b)(1) (West Supp. 2017). In his fourth, he attacks the best-interest finding. *See* Tex. Fam. Code Ann. § 161.001(b)(2) (West Supp. 2017). And in his fifth, he asserts that the trial court erred by admitting his criminal history into evidence. We affirm.

**Termination Generally**

In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (West 2014); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, "[w]hen the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures." *In re E.R.*, 385 S.W.3d 552, 554 (Tex. 2012) (citing *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391–92 (1982)). We strictly scrutinize termination proceedings and strictly construe involuntary-termination statutes in favor of the parent. *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *E.R.*, 385 S.W.3d at 554–55; *Holick*, 685 S.W.2d at 20–21.

Termination decisions must be supported by clear and convincing evidence. *See* Tex. Fam. Code Ann. § 161.001(b), § 161.206(a) (West 2014); *E.N.C.*, 384 S.W.3d at 802. Due process demands this heightened standard because "[a] parental rights termination proceeding encumbers a value 'far more precious than any property right.'" *E.R.*, 385 S.W.3d at 555 (quoting *Santosky*, 455 U.S. at 758–59, 102 S. Ct. at 1397); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex.

2002); *see also E.N.C.*, 384 S.W.3d at 802. Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *E.N.C.*, 384 S.W.3d at 802.

For a trial court to terminate a parent–child relationship, the party seeking termination must establish by clear and convincing evidence that the parent's actions satisfy one ground listed in family code section 161.001(b)(1) and that termination is in the best interest of the child under family code section 161.001(b)(2). Tex. Fam. Code Ann. § 161.001(b); *E.N.C.*, 384 S.W.3d at 803; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the factfinder. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re C.D.E.*, 391 S.W.3d 287, 295 (Tex. App.—Fort Worth 2012, no pet.).

**Background**

When born, J.B. exhibited withdrawal symptoms, and after testing, J.B.'s meconium came back positive for both methamphetamine and amphetamine. Due to feeding problems, J.B. remained in the hospital for about two weeks, after which the Texas Department of Family and Protective Services placed him in foster care.

J.B.'s mother later relinquished her parental rights.

3

DNA testing determined that D.L.M. was J.B.'s father. At the time these proceedings took place, D.L.M. was incarcerated and serving a ten-year sentence for unlawful possession of a firearm by a felon.

The jury here found and the judgment reflects that D.L.M.'s parental rights were terminated based on three grounds plus the requisite best-interest finding:

- D.L.M. had "engaged in conduct or knowingly placed [J.B.] with persons who [had] engaged in conduct [that] endanger[ed] [J.B.'s] physical or emotional well-being . . . ," *see* Tex. Fam. Code Ann. § 161.001(b)(1)(E);

- D.L.M. had "constructively abandoned [J.B.] who ha[d] been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months," and that "(i) the department ha[d] made reasonable efforts to return [J.B.] to [D.L.M.]; (ii) [D.L.M.] ha[d] not regularly visited or maintained significant contact with [J.B.]; and (iii) [D.L.M.] ha[d] demonstrated an inability to provide [J.B.] with a safe environment," *see id.* § 161.001(b)(1)(N); and

- D.L.M. had "knowingly engaged in criminal conduct that ha[d] resulted in" his "(i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for [J.B.] for not less than two years from the date of filing the petition." *See id.* § 161.001(b)(1)(Q).

- The jury also found "that termination [was] in [J.B.'s] best interest . . . ." *See id.* § 161.001(b)(2).

### Grounds Discussion—D.L.M.'s First Three Issues

In the first three issues in D.L.M.'s brief, he asserts that the evidence is legally and factually insufficient to support grounds under subsections (E)

4

(endangering conduct), (N) (constructive abandonment), and (Q) (criminal conduct resulting in inability to care for child due to confinement).[3]

## I. Standard of Review

### A. Legal Sufficiency

In evaluating the evidence for legal sufficiency in parental-termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the Department proved both the particular ground for termination and the child's best interest. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment, and we resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so. *Id.* We also must disregard all evidence that a reasonable factfinder could have disbelieved, in

---

[3]Under his first issue in his brief, D.L.M. refers to grounds under section 161.001(b)(1)(D) (endangering conditions or surroundings)—a ground on which the termination decree is not based—instead of grounds under subsection (E) (endangering conduct). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D). Within his discussion, however, he also refers to the allegation that he "engaged in conduct" that endangered the child's physical or emotional well-being, which is language found in subsection (E). But he mistakenly attributes that engaged-in-conduct language to grounds under subsection (D) (endangering conditions or surroundings). Elsewhere he argues that the Department failed to prove that he engaged in a dangerous "course of conduct," which is a phrase associated with subsection (E). *See In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Finally, D.L.M.'s prayer tracks the language found in both subsections (D) and (E). We construe his brief to attack grounds under subsection (E) (endangering conduct). *See* Tex. R. App. P. 38.9 ("Briefing Rules to Be Construed Liberally"). Otherwise, a failure to challenge all the grounds on which a termination is based renders attacks on those grounds that are contested moot. *See In re S.L.*, 421 S.W.3d 34, 37 (Tex. App.—Waco 2013, no pet.).

addition to considering undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *See id.* In doing our job, we cannot weigh witness-credibility issues that depend on the witness's appearance and demeanor because that is the factfinder's province. *Id.* And even when credibility issues appear in the appellate record, we defer to the factfinder's determinations as long as they are not unreasonable. *Id.*

## B. Factual Sufficiency

We must perform "an exacting review of the entire record" in determining whether the evidence is factually sufficient to support terminating a parent-child relationship. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the verdict with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated an alleged ground and that termination was in the child's best interest. Tex. Fam. Code Ann. § 161.001(b); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

6

## II. Discussion

D.L.M. confirmed that he was currently serving a ten-year sentence for unlawful possession of a firearm. He was sentenced on March 9, 2017, with about 14 months' credit for time served. Trial in this termination proceeding was in January 2018—ten months after his sentencing for unlawful possession. So at the time of trial, he had served about two years of his sentence. D.L.M. testified that he thought he would serve only a few more months before getting paroled. His next parole hearing was in March or April 2018. But parole is inherently speculative, and its possibility does not prevent a finding that the parent will remain incarcerated for not less than two years from the date the Department filed its petition—here, July 2016. *See H.R.M.*, 209 S.W.3d at 108–09 (discussing parole in the context of subsection (Q) grounds). In D.L.M.'s case, he admitted to not having gotten paroled on his two earlier trips to the penitentiary—once on an eight-year sentence and once on a two-year sentence.

Viewing the evidence in light most favorable to the verdict, we hold that the evidence is such that a factfinder could reasonably form a firm belief or conviction that D.L.M. had "knowingly engaged in criminal conduct that ha[d] resulted in" his "(i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for [J.B.] for not less than two years from the date of filing the petition" and is thus legally sufficient on the subsection (Q) grounds. *See J.P.B.*, 180 S.W.3d at 573; *see also* Tex. Fam. Code Ann. § 161.001(b)(1)(Q).

Furthermore, based on the entire record and giving due deference to the factfinder's findings, we also hold that a factfinder could reasonably form a firm conviction or belief that D.L.M. had "knowingly engaged in criminal conduct that ha[d] resulted in" his "(i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for [J.B.] for not less than two years from the date of filing the petition" and that the evidence is therefore also factually sufficient on subsection (Q) grounds. *See H.R.M.*, 209 S.W.3d at 108; *C.H.*, 89 S.W.3d at 28; *see also* Tex. Fam. Code Ann. § 161.001(b)(1)(Q).

We overrule D.L.M.'s third issue.

## For purposes of this appeal, we need not decide whether the evidence supports the endangering-conduct and constructive-abandonment findings.

When we find that sufficient evidence supports one of the alleged predicate grounds for termination under section 161.001(b)(1), we need not review the remaining predicate grounds. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re S.K.A.*, 236 S.W.3d. 875, 900 (Tex. App.—Texarkana 2007), *pet. denied*, 260 S.W.3d 463 (Tex. 2008). Accordingly, we do not address whether the evidence sufficed to support the grounds alleged either under section 161.001(b)(1)(E) (endangering conduct) or under section 161.001(b)(1)(N) (constructive abandonment). For purposes of termination, one ground is sufficient. *See In re A.O.*, No. 02-09-00005-CV, 2009 WL 1815780, at *6 (Tex. App.—Fort Worth June 25, 2009, no pet.) (mem. op.).

We overrule D.L.M.'s first and second issues. Tex. R. App. P. 47.1.

8

**Best Interest—D.L.M.'s Fourth Issue**

In D.L.M.'s fourth issue, he contends that the evidence is legally and factually insufficient to support the trial court's finding that termination was in J.B.'s best interest.

## I. Standard of Review—Best Interest

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).

We review the entire record to determine the child's best interest. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). The same evidence may be probative both of the grounds under section 161.001(b)(1) and of best interest under section 161.001(b)(2). *Id.* at 249; *C.H.*, 89 S.W.3d at 28. Nonexclusive factors that the factfinder in a termination case may also use in determining the child's best interest include:

- the child's desires;
- the child's emotional and physical needs now and in the future;
- the emotional and physical danger to the child now and in the future;
- the parental abilities of the individuals seeking custody;
- the programs available to assist these individuals to promote the child's best interest;
- the plans for the child by these individuals or by the agency seeking custody;
- the stability of the home or proposed placement;

9

- the parent's acts or omissions which may indicate that the existing parent-child relationship is not a proper one; and

- the parent's excuse, if any, for the acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (citations omitted); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best-interest finding, "we consider, among other evidence, the *Holley* factors"); *E.N.C.*, 384 S.W.3d at 807. These factors are not exhaustive, and some listed factors may not apply to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the child's best interest. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.*

## II. Best-Interest Discussion

D.L.M. was 35 years old at the time of trial. Since his eighteenth birthday, he had spent more time incarcerated than free. He admitted having multiple previous convictions for unauthorized use of a motor vehicle, evading arrest, and burglary of a habitation, as well as convictions for organized retail theft, possession of marijuana, criminal mischief, unlawful possession of a firearm by a felon, evading detention, cruelty to animals, and unlawful restraint. D.L.M. was incarcerated at the time of trial, serving a ten-year sentence for unlawful possession of a firearm.

D.L.M. had been incarcerated twice before. In 2013, he was sentenced to two years for evading arrest in a vehicle, and before that, in 2005, he was

10

sentenced to eight years for burglary and for possession of a prohibited weapon—a Molotov cocktail.[4] D.L.M. admitted that when he was released from prison in 2012, he was in legal trouble again within four months. He also admitted that when he was released in 2015, he was in trouble again within three months.

At trial in January 2018, D.L.M. claimed that his next parole-board meeting was only months away—in March or April 2018—and that he thought he would be released. He acknowledged that he had served all eight years of his eight-year sentence from 2005 and both years of his two-year sentence from 2013.

The Department caseworker acknowledged that, other than being in jail, D.L.M. had not endangered J.B.'s life.

D.L.M. denied knowing that J.B.'s mother was using drugs. He contended that he did not know about her drug use until J.B. tested positive for methamphetamines.

And not until December 2016, after DNA testing, did D.L.M. even know he was J.B.'s father. D.L.M. had never met J.B. and had never sent any birthday presents, letters, or pictures to J.B. Acknowledging that bonding occurs only by being together, D.L.M. admitted that he and J.B. had not bonded.

---

[4]D.L.M. mistakenly testified that he received a two-year sentence for theft in 2012. He received a theft conviction in 2013 on the same date as his evading-arrest-in-a-vehicle conviction. The offense dates for both convictions were in 2012.

11

D.L.M. had fathered two other children—daughters—one in California and one in Gainesville. Both lived with their mothers.[5] Although D.L.M. did not pay child support, he testified that he supported his children when he could, usually by selling drugs. D.L.M. felt particularly motivated this time because J.B. was a boy and carried his last name.[6]

Once released from prison, D.L.M. planned to work on cars in a body shop. D.L.M. had previously held a job only twice—once for six months at El Fenix in 2012, and once for six months at Toby Keith's, also in 2012. When he is released from prison, D.L.M.'s fiancée said that he could live with her.

In the meantime, his grandmother and sister had agreed to help care for J.B. The Department had conducted a home study on D.L.M.'s grandmother, but the study's results had not yet come back.[7] D.L.M.'s grandmother was 72 years old and currently lived in a two-bedroom, one-bathroom house with five children.

D.L.M.'s sister spoke highly of his parenting ability. His grandmother described D.L.M. as a "good boy" when around her, as having a good relationship with his daughters, and as having the ability to be a good father.

---

[5]D.L.M.'s sister testified that his daughter in Gainesville currently lived with her.

[6]J.B. did not carry D.L.M.'s last name. Nevertheless, the gist of D.L.M.'s testimony was that the thought of having a son was particularly motivating.

[7]D.L.M.'s grandmother testified but denied knowing anything about a home study on her.

As for J.B., he was thriving in his foster home, which was the only home he had ever known. The foster parents were very nurturing and hoped to adopt him.

J.B.'s foster (and prospective adoptive) mother testified, stating that she stayed in contact with J.B.'s mother and that J.B. visited and did activities with his half-siblings. If she were allowed to adopt J.B., the foster mother testified that she would allow D.L.M.'s family to have contact with him. Expressing her belief that D.L.M. had a right to get to know his son, she even extended that offer to D.L.M., provided they met at a neutral place in the beginning, at least until they got to know him better. The foster mother testified that she offered J.B. certainty and permanence.

A child's need for permanence through the establishment of a stable, permanent home is a paramount consideration in the best-interest determination. *In re. E.R.W.*, 528 S.W.3d 251, 267 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Unlike the prospective adoptive family here—or presumably like any other family with whom the Department might ultimately place J.B.—D.L.M. offered only uncertainty. He might get paroled in March 2018 or, if his previous incarcerations were any indication, he might not get paroled at all and thus not be released until January 2026.

D.L.M. had not met J.B.'s emotional or physical needs in the past, and because D.L.M. was in prison, his ability to meet those needs in the future was altogether speculative. D.L.M.'s criminal history posed an emotional and physical danger to J.B. should D.L.M. return to a life of crime; and although D.L.M.

13

assured the jury that he would change his ways, the jury was not required to believe him. After all, despite his already having two daughters, D.L.M. had engaged in criminal conduct, was convicted, and was given a lengthy prison sentence. D.L.M.'s sister and grandmother might have thought highly of his parenting skills, but his ability to parent at all was compromised by his incarcerations.

Viewing the evidence in the light most favorable to the verdict, we hold that a reasonable factfinder could have formed a firm belief or conviction that termination was in J.B.'s best interest and thus that the evidence was legally sufficient. *See J.F.C.*, 96 S.W.3d at 266.

And when viewing the evidence equally, in light of the entire record and while according due deference to the jury's findings, we hold that a reasonable factfinder could have reasonably formed a firm belief or conviction that the termination was in J.B.'s best interest and, therefore, that the evidence is factually sufficient as well. *See id.*; *C.H.*, 89 S.W.3d at 26.

We overrule D.L.M.'s fourth issue.

## Criminal History

In D.L.M.'s fifth issue, he argues that the trial court erred by allowing evidence and testimony of his criminal history into evidence.

### I. Standard of Review—Admission of Evidence

We review a trial court's admission of challenged evidence for an abuse of discretion. *In re D.D.*, No. 02-17-00368-CV, 2018 WL 1630708, at *12 (Tex.

14

App.—Fort Worth Apr. 5, 2018, no pet. h.) (mem. op.) (citing *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015)). A trial court abuses its discretion if it acts without reference to any guiding rules or principles—that is, if it acts arbitrarily or unreasonably. *Id.* (citing *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004)). We must uphold the trial court's evidentiary ruling if the record provides any legitimate basis for it. *Id.* (citing *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998)).

Relevant evidence tends "to make a fact more or less probable than it would be without the evidence" and is generally admissible. Tex. R. Evid. 401(a), 402; *D.D.*, 2018 WL 1630708, at *12. But if the risk of unfair prejudice substantially outweighs relevant evidence's probative value, that evidence should be excluded. *See* Tex. R. Evid. 403; *D.D.*, 2018 WL 1630708, at *13. Rule 403 favors the admission of relevant evidence and presumes that relevant evidence will be more probative than prejudicial. *D.D.*, 2018 WL 1630708, at *13 (citing *Murray v. Tex. Dept. of Fam. & Protective Servs.*, 294 S.W.3d 360, 368 (Tex. App.—Austin 2009, no pet)). Excluding evidence under rule 403 is an extraordinary remedy that must be done sparingly. *Id.* (citing *Murray*, 294 S.W.3d at 368).

## II. Discussion

To prove that a parent's rights should be terminated, the Department must prove both a subsection (1) ground and, under subsection (2), that termination is

in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1), (2); *D.D.*, 2018 WL 1630708, at *12.

Evidence of extensive criminal history is relevant when evaluating parental abilities. *In re L.M.*, No. 02-16-00127-CV, 2016 WL 5957030, at *15 (Tex. App.—Fort Worth Oct. 13, 2016, pet. denied) (mem. op.); *In re J.F.*, No. 02-08-00183-CV, 2009 WL 806889, at *8 (Tex. App.—Fort Worth Mar. 26, 2009, pet. denied) (mem. op.); *see also In re S.B.*, 207 S.W.3d 877, 886 (Tex. App.—Fort Worth 2006, no pet.) (noting that parent's poor judgment may be considered in determining child's best interest). Criminal history and incarceration adversely affect the amount of contact between a parent and child and the parent's ability to provide financial and emotional support to the child. *In re J.L.G.*, No. 06-16-00087-CV, 2017 WL 1290895, at *5 (Tex. App.—Texarkana Apr. 6, 2017, no pet.) (mem. op.). In D.L.M.'s case, his criminal history is directly relevant both to his absence from J.B.'s life and to his failure to financially and emotionally support him. *In re C.W.*, No. 02-17-00025-CV, 2017 WL 2289115, at *7 (Tex. App.—Fort Worth May 25, 2017, no pet.) (mem. op.). Even criminal conduct before the child is born is relevant in evaluating the appropriateness of a parent's choices and lifestyle. *Calderon v. Tex. Dept. of Fam. & Protective Servs.*, No. 03-09-00257-CV, 2010 WL 2330372, at *2 n.3 (Tex. App.—Austin June 11, 2010, no pet.) (mem. op.). D.L.M.'s extensive criminal history was thus directly relevant to the best-interest determination. *See* Tex. R. Evid. 401.

16

And although the evidence was prejudicial, it was not unfairly prejudicial. "[T]estimony is not inadmissible on the sole ground that it is 'prejudicial' because in our adversarial system, much of a proponent's evidence is legitimately intended to wound the opponent." *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). "The fact that evidence has some prejudicial effect is insufficient to warrant its exclusion. To be excluded, evidence must not only create a danger of unfair prejudice, but that danger must substantially outweigh its relevance." *In re T.E.*, No. 06-11-00048-CV, 2011 WL 5865712, at *7 (Tex. App.—Texarkana Nov. 23, 2011, no pet.) (mem. op.) (internal citations omitted); *see* Tex. R. Evid. 403. Here, D.L.M.'s criminal history was undoubtedly prejudicial but not unfairly so, as it showed a long pattern of unlawful, dangerous behavior that resulted in his repeated incarceration and bore on whether the factfinder could trust D.L.M. to responsibly and capably raise J.B. to adulthood.

We overrule D.L.M.'s fifth issue.

## Conclusion

Having overruled each of D.L.M.'s issues, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
ELIZABETH KERR
JUSTICE

PANEL:  SUDDERTH, C.J.; KERR and BIRDWELL, JJ.

DELIVERED:  July 5, 2018

17